James W. MOORE, Plaintiff–Appellant,

v.

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, being sued as Jo Anne Barnhart,* Commissioner Social Security Administration, Defendant–Appellee.

No. 00–15947.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 12, 2001.**

Filed Jan. 24, 2002.

---

---

\* Jo Anne Barnhart is substituted for her predecessor Kenneth S. Apfel as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

\*\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Ralph Wilborn and Etta L. Wilborn, Tucson, AZ, for the plaintiff-appellant.

William W. Youngman, Assistant United States Attorney, Portland, OR, and Amy L. Gilbrough, Assistant Regional Counsel, Social Security Administration, Seattle, WA, for the defendant-appellee.

Before: POLITZ,*** W. FLETCHER and FISHER, Circuit Judges.

FISHER, Circuit Judge.

We are asked to decide what weight an administrative law judge may give to an applicant's employment that begins after the end of the period for which the applicant is seeking Social Security disability benefits. We hold that such employment, unless wholly inconsistent with the claimed disability, is not a "specific and legitimate" reason for rejecting the opinions of examining physicians contradicted only by a

*** The Honorable Henry A. Politz, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

nonexamining physician. It follows that such a record of work does not supply the more demanding "clear and convincing" reason required to reject the medically supported testimony of an applicant.

## I.

James Moore was born on December 28, 1957. He attended programs for developmentally delayed students in grade and high school and lived a sheltered life with his parents until he was 31 years old. He was, in the opinion of an examining psychologist, "evidently very, very dependent upon his parents."

When his mother died on April 19, 1989—several years after his father committed suicide—Moore was thrust into a period of deep depression with severe somatic symptoms and psychotic features. Soon after his mother's death, he applied for disability benefits with the Social Security Administration, including child's disability benefits dating back to the time of his birth. On August 21, 1991, Moore began a job power washing trucks and has held that job since. Given his new status, he amended his disability application to request benefits only for the "closed period" predating his employment.

Three mental health specialists examined Moore between May 1989 and August 1991. In May and August of 1989, Drs. Stipek (a psychologist) and Kurlychek (a neuropsychologist), respectively, diagnosed Moore with moderate developmental disabilities that they said imposed severe restrictions on his ability to function since his mother's death and rendered him unable to work. Each concluded that he might, at a later time, benefit from vocational rehabilitation but expressly advised

against immediate implementation of such a program because of the severity of his symptoms.[1]

Dr. Freedman, a psychiatrist, examined Moore in April 1991, about two years after the death of Moore's mother. He diagnosed Moore as having significantly less severe symptoms than found by Drs. Stipek and Kurlychek but concurred with them that Moore was markedly impaired in many major categories of functioning, including the ability to: maintain concentration; sustain an ordinary work routine; work with others without being distracted; interact appropriately with the public; complete a workday without interruptions from symptoms; and accept instructions from supervisors.

At Moore's hearing before an administrative law judge (ALJ) on May 15, 1991, Dr. Isabelle Moser, a nonexamining psychologist, contradicted the opinions of Moore's three examining physicians. Dr. Moser concluded that Moore was not, and had not been, markedly impaired in any major function. Based on vocational expert testimony assuming Moser's evaluation to be accurate, the ALJ concluded that Moore was not eligible for Social Security disability benefits. We reversed that decision and remanded for further proceedings, holding that the ALJ had not met the burden for rejecting the conclusions of the examining physicians. *Moore v. Shalala*, No. 93–35801, 1995 WL 261135, at *2 (9th Cir. May 3, 1995).

At his second hearing on March 5, 1998, Moore described his job washing trucks that he had held since August 1991, and testified that he thought he could have done that job before his parents died. But he explained that after his mother died he went through a period of severe depres-

---

1. Despite the recommendations against it, in November 1989 Moore was laced in a vocational rehabilitation program from which he was terminated for being "confused" and "inappropriate."

sion that prevented him from working and that he was able to begin working in 1991 only through the assistance of an accommodating employer. Relying primarily on Moore's record of employment from August 21, 1991 forward, the ALJ denied Moore's application for disability benefits, and the district court affirmed.

## II.

■ We review de novo a district court's decision to affirm, reverse or modify a determination of the Social Security Administration ("SSA"). *Harman v. Appfel*, 211 F.3d 1172, 1174 (9th Cir.2000). This court "must independently determine whether the Commissioner's decision (1) is free of legal error and (2) is supported by substantial evidence." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996); *accord Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989).

### A.

■ The testimony of both Moore and his examining physicians supported his application for a closed period of disability benefits between his mother's death and his start of work in August 1991. The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995). Where a claimant's testimony is medically supported, the ALJ "can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). The clear and convincing standard is the most demanding required in Social Security cases. It is the same as that required to reject the uncontradicted

opinion of a treating physician. *See Lester*, 81 F.3d at 830.

■ The ALJ determined that the testimony of Moore's examining physicians supported his application, but rejected that testimony based on Moore's work history after the end of the closed period of disability for which he was applying. The ALJ concluded: "Prior formal evaluations are ultimately theoretical regarding the claimant's capacity to work. The most compelling evidence is the claimant's sustained, successful work without special accommodations since 1991."

Neither the Social Security Act nor regulations direct the SSA to treat an applicant's employment after a claimed period of disability as evidence against the applicant's claim. Although Social Security regulations provide that employment "*during* any period" of claimed disability may be probative of a claimant's ability to work, 20 C.F.R. §§ 404.1571, 416.971 (emphasis added), no similar consideration is recommended with regard to work *after* the claimed period of disability. It is clear that "the framers of the Act contemplated that some applications for benefits would be made which would result in an award of benefits after the claimant had recovered from his disability." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972) (citing 42 U.S.C. § 416(i)(2)(D) ("period of disability shall end with … the second month following the month in which the disability ceases")); *cf. Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("Improvement in a totally disabled person's condition, while permitting that person to work, will not necessarily or immediately lead the SSA to terminate [disability] benefits."). Indeed, the SSA's regulations provide for a "trial work period" in which a claimant may "test your ability to work

and still be considered disabled." 20 C.F.R. § 404.1592.

Given that the Social Security Act and regulations are designed "to encourage individuals who have previously suffered from a disability to return to substantial gainful employment," *Flaten v. Secretary of HHS*, 44 F.3d 1453, 1458(9th Cir.1995), we hold that an applicant's employment that begins after the end of the period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a "specific and legitimate" reason for rejecting the opinions of examining physicians that an individual is disabled. It follows that such a record of work does not supply the more demanding "clear and convincing" reason required to reject the medically supported testimony of an applicant.

Moore's entry into the workforce was not wholly inconsistent with his claimed period of disability. The evidence shows that Moore was disabled by severe depression following his mother's death and gradually recovered to the point, over two years later, where he was able to function in a job requiring minimal skills. Moore's ability to obtain and hold that job does not form an adequate reason for rejecting his testimony or that of his examining physicians that he was not able to work earlier.

The other reasons found in the ALJ's opinion, which the ALJ acknowledged he did not find as compelling, cannot sustain his rejection of the testimony of Moore and his physicians.[2] Accordingly, we hold that the ALJ's rejection of Moore's application for disability benefits for the period between his mother's death in 1989 and his beginning of work in 1991 was not free of legal error and was not supported by substantial evidence.

## B.

Moore also applied for disabled child's insurance benefits, claiming that his disability began at birth. To be eligible for disabled child's benefits, the claimant must "at the time [the] application [is] filed" be "under a disability . . . which began before he attained the age of 22." 42 U.S.C. § 402(d)(1)(B)(ii).

There is substantial evidence in the record supporting the ALJ's rejection of Moore's application for disabled child's benefits. All of Moore's examining physicians, although noting developmental disabilities from birth, concluded that Moore's mental condition only became severe following the trauma associated with his mother's death. According to Moore's own testimony, he would have been able to work at his current job before his mother died, but not in the period after. The record reflects that, before his mother died, Moore completed high school and obtained a community college degree in auto and diesel mechanics. Nothing in the record suggests that Moore was too disabled to work prior to his mother's death. Accordingly, there is substantial evidence in the record supporting the ALJ's denial

---

2. The ALJ considered that Moore had not been prescribed any medication, received a B in a one-credit math class prior to his mother's death, drove himself to a doctor visit in 1991 and completed basic activities of daily living such as watching television and performing odd jobs. These reasons are not adequate to reject the corroborating testimony of Moore and his physicians regarding his inability to work in the period following his mother's death. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted).

of Moore's application for disabled child's benefits.

### III.

■ This court has discretion to remand a case for further evidence or to award benefits. Evidence should be credited and an immediate award directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen,* 80 F.3d at 1292.

Where an applicant meets the diagnostic and functional limitations criteria for a disability listed in the appendix to 20 C.F.R. pt. 404, he is eligible for benefits without further inquiry. *Id.* §§ 404.1520(d), 404.1525. It was agreed by all physicians, including nonexamining Dr. Moser, that Moore met the diagnostic criteria for a listed affective disorder. *See id.* pt. 404, Subpt. P, App. 1, § 12.04. The improperly rejected testimony of Moore's three examining physicians established that Moore met the functional limitations criteria for a listed affective disorder based on his marked difficulties in maintaining social functioning and maintaining concentration, persistence or pace. *See id.* Crediting the testimony of Moore's examining physicians therefore leads to the conclusion that Moore had a listed disability between April 19, 1989 and August 21, 1991. There are no outstanding issues to preclude this court from making a disability determination. The record is fully developed and, considering the evidence that the ALJ improperly rejected, a finding of disability is required.

### CONCLUSION

The ALJ's rejection of Moore's application for disabled child's benefits is affirmed. The ALJ's finding that Moore was not disabled from April 19, 1989 to August 21, 1991 is reversed. We remand for a payment of benefits for a closed period between April 19, 1989 and August 21, 1991.

Costs to be paid by appellee.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR PAYMENT OF BENEFITS.