**Dennis J. WAGGONER, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant—Appellee.**

No. 00–35825.

D.C. No. CV–99–06138–REJ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 2002.

Decided Oct. 22, 2002.

Before BROWNING, FISHER, and TALLMAN, Circuit Judges.

MEMORANDUM *

In 1988 Waggoner filed for disability insurance benefits under Title II and, in 1989 and 1994, for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401–33, 1381–83f. To establish entitlement to Title II benefits, he needed to prove that he was disabled on or before December 31, 1988, his last date of insured status. There is no onset date requirement for his SSI application.

Dennis Waggoner has suffered from severe back pain aggravated by multiple industrial injuries since the early 1980s. The assessment of his disability status has been complicated by his addiction to pain medications, leading him to lie to his doctors in order to obtain more medication. Largely based on this fact, the administrative law judge ("ALJ") rejected Waggoner's claim that he has been disabled since his last date of insured status, December 31, 1988, but found that Waggoner was eligible for SSI benefits beginning April 14, 1994. This court "must independently

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

determine whether the Commissioner's decision (1) is free of legal error and (2) is supported by substantial evidence." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996).

■ We affirm the decision of the Commissioner that Waggoner was not eligible for Title II benefits, because he was able to perform work available in the national economy on December 31, 1988. Although the record is conflicted on this point, the ALJ reasonably based his opinion on the findings of doctors at the Oregon Pain Center that between April and December 1988 Waggoner had only "mild to moderate" disabilities that did not prevent him from performing light work. The Oregon Pain Center's evaluation is supported by an evaluation by Waggoner's long time treating physician, Dr. Redfield, on December 14, 1987, which stated that Waggoner could work with lifting restricted to no more than 50 pounds on a repetitive basis. To the extent that the ALJ rejected the opinions of Waggoner's treating or examining physicians in order to find that he was not disabled on December 31, 1988, we conclude that the ALJ supported his findings with specific and legitimate reasons. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995). These include that Waggoner had displayed a propensity to lie to his physicians in order to obtain medications and that the rejected physician testimony was not based on as close of a treating relationship at the time of their evaluations as that enjoyed by the physicians whose opinions were accepted. Accordingly, we conclude that the Commissioner's decision that Waggoner was not disabled for the purposes of Title II benefits was supported by substantial evidence in the record.

■ We do not find substantial evidence supporting the Commissioner's finding that Waggoner became disabled only on April 24, 1994, due to his migraine headaches. Waggoner's April 1994 application for benefits was based in part on his migraine headaches and dated back to 1987. The ALJ found Waggoner's complaint back to 1987 unreliable because—although Waggoner stated he had migraines since childhood—he never missed work because of them. A May 18, 1990 report from Dr. Goins, however, whose opinions the ALJ found credible, notes that although Waggoner had severe headaches since his childhood they had become more frequent and intense recently. At the time of Dr. Goins' 1990 report, Waggoner had been suffering from a migraine "preceded by a visual aura" continuously for the last two weeks, roughly since May 1. Similar reports of debilitating headaches appear in the reports of Dr. Redfield from May 22, 1990, and Dr. Hayes from 1992. These medical reports of his severe headaches dating back to at least 1990 are uncontradicted in the record.

The ALJ acknowledged these reports but rejected them based primarily on his distrust of Waggoner's self-reporting due to his chemical addictions. The ALJ's reasons for rejecting uncontradicted evidence must be clear and convincing, "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir.2002). The ALJ's general distrust of Waggoner does not meet this standard.

■ The ALJ also rejected the psychological assessments of numerous mental health specialists who examined Waggoner on multiple occasions, including the findings of Drs. Hayes and Grosscup that Waggoner's depression and chronic pain syndrome prevented him from completing a normal work day. The ALJ based the rejections of the psychological diagnoses on the review of medical records by a non-examining medical expert, Dr. Sturges.

An ALJ cannot rely alone on the opinion of a non-examining medical expert to reject the opinion of examining physicians unless the non-examining expert's opinions are "supported by other evidence in the record and are consistent with it," such that they constitute "substantial evidence" for rejecting the examining expert's opinion. *Andrews v. Shalala,* 53 F.3d 1035, 1042 (9th Cir.1995). We do not find Dr. Struges' testimony to be substantial enough evidence for the complete rejection of the opinions of Drs. Hayes and Grosscup.

■ Where an ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, this court credits that opinion as a matter of law. *Lester,* 81 F.3d at 834. Crediting the opinions of Waggoner's doctors leads to the conclusion that Waggoner was disabled by May 1990. There are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. We therefore remand for an award of SSI benefits beginning May 1, 1990. *See Smolen,* 80 F.3d at 1292.

**REVERSED AND REMANDED FOR AWARD OF BENEFITS.**