**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY TOMMASETTI,
                    *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE,*
Commissioner of Social Security,
                    *Defendant-Appellee.*

No. 06-55999

D.C. No.
CV-04-09812-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
Patrick J. Walsh, Magistrate Judge, Presiding

Argued and Submitted
February 15, 2008—Pasadena, California

Filed July 17, 2008

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

*Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R. App. P. 43(c)(2).

**COUNSEL**

Young Cho, Esq., Law Offices of Lawrence D. Rohlfing Attorneys At Law, for plaintiff-appellant Anthony Tommasetti.

Peter D. Keisler, Assistant Attorney General, George S. Cardona, Acting United States Attorney, Lucille Gonzales Meis, Regional Chief Counsel, Region IX, and Geralyn A. Gulseth (Argued), Special Assistant U.S. Attorney, for defendant-appellee Michael J. Astrue, Commissioner of Social Security.

---

**OPINION**

CALLAHAN, Circuit Judge:

Anthony Tommasetti ("Tommasetti") filed an application for Social Security benefits claiming that he was unable to work because of lower back pain and diabetes mellitus. After an initial denial of that application, and following what the district court characterized as an "administrative odyssey," the Social Security Appeals Council remanded Tommasetti's claim to a new Administrative Law Judge ("ALJ") to conduct a de novo hearing. At that hearing, the ALJ took testimony from a medical expert, a vocational expert ("VE"), and Tommasetti. After largely rejecting the opinion of one of Tommasetti's treating physicians and finding Tommasetti's testimony not credible, the ALJ concluded, based almost entirely on the VE's testimony, that Tommasetti could perform his past work. Alternatively, the ALJ found that Tommasetti could perform other work in the national economy and local economy. The Appeals Council declined jurisdiction over Tommasetti's appeal, and the district court affirmed the ALJ's decision as supported by substantial evidence.

We hold that the ALJ provided "clear and convincing" reasons for rejecting Tommasetti's testimony as not credible. *See Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). We further conclude that the ALJ provided "specific and legitimate" reasons based on substantial evidence for her partial rejection of the treating physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Finally, we hold

that although the ALJ erred in finding that Tommasetti could perform past work, *see Johnson v. Shalala*, 60 F.3d 1428, 1434-35 (9th Cir. 1995), this error was harmless because the ALJ properly decided that Tommasetti could perform other work in the economy. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Accordingly, we affirm the district court's decision.

## I. Background

## A. Tommasetti's Relevant Personal and Medical History

Tommasetti was 53 years old on the alleged date of onset of his medical conditions at issue here, and he was 59 years old when his disability insurance expired in December 1999. Tommasetti attended college in Italy, has training in electronics, and previously worked as an electronics technician and TV repair person. He was involved in a car accident in April 1994 and was in pain until October 1994. Later that year he fell off a ladder while working. He was involved in subsequent car accidents in 1999 and 2000.

While Tommasetti saw several physicians, at issue on appeal is Dr. Andrea Nachenberg's reports based on her intermittent treatment of Tommasetti.[1] Dr. Nachenberg first saw Tommasetti in March 1995, at which time she noted his claims of back pain and inability to stay in one position for more than ten minutes. Upon conducting a physical exam she noted "no evidence of weakness" and "minimal tenderness" on palpation. She diagnosed a "probable lumbosacral strain superimposed on osteoarthritis of the lumbar spine." She saw him again in July 1996 for right shoulder and right knee pain, and in October 1996 for lower back pain. An x-ray of his back revealed spurring and narrowing of the L4-5 and L5-S1 interspaces. Tommasetti again saw Dr. Nachenberg in March 1997 and November 1997 about lower back pain. In December

---

[1]Dr. Nachenberg did not testify at the administrative hearing.

1997, Dr. Nachenberg wrote a letter that summarized Tommasetti's medical history and concluded that she did "not expect him to recover significantly at this time." Dr. Nachenberg next saw Tommasetti in September 1998 and completed a "Musculoskeletal System Residual Functional Capacity Questionnaire" ("Questionnaire"). She stated that Tommasetti could sit continuously for ten minutes, and for up to four hours in an eight-hour workday; stand continuously for thirty minutes, and for up to two hours in an eight-hour workday; required use of a lumbosacral corset; and could at most occasionally lift ten pounds.

## B. Hearing Testimony

Tommasetti testified at the hearing before the ALJ regarding his lower back pain and diabetes. He testified that he could not stand, walk, climb ladders, or work; but that he could have a job where he was on his feet for no more than two hours a day, without ladder-climbing. He claimed that at the time in question he could lift at most a few pounds. He also stated that he stopped taking prescribed medicine in 1995 or 1996 due to dizziness, and he could not recall if a doctor had prescribed the walking cane he intermittently used. He further testified that he had made no attempts to work and that he supported himself with $97,000 in savings. Contrary to previous representations, Tommasetti testified that diabetes was not a disabling problem and that medication properly controlled it.

At the hearing, the ALJ took testimony from Dr. Wiseman, an agency medical expert who testified based on his review of Tommasetti's medical records. The ALJ found Dr. Wiseman's testimony to be "somewhat equivocal." Although Dr. Wiseman opined that Tommasetti had elected to limit himself based on self-chosen limitations, he refused to definitively assess Tommasetti's condition. Instead, he merely "accepted" what Dr. Nachenberg stated. He did not, however, explicitly endorse Dr. Nachenberg's assessment.

The VE testified regarding Tommasetti's ability to perform his prior work and other work in the national economy and local economy. The VE noted that Tommasetti previously worked in electronics assembly and TV repair. The VE responded to hypothetical questions based on the following residual functioning capacity: capable of lifting up to ten pounds, standing or walking for six hours in an eight-hour workday (in two-hour increments), and sitting for six hours in an eight-hour workday. Regarding prior work as an electronics assembler, the VE opined that Tommasetti could not perform that work as he had previously performed it, but concluded without much elaboration that he could perform it as it is "typically performed." The VE also testified that Tommasetti could perform work in the national economy as a semiconductor assembler, for which there were 100,000 jobs nationally and 9,000 jobs regionally.

## II.   Standards of Review

We review the district court's order affirming the ALJ's denial of social security benefits de novo, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), and will disturb the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Burch*, 400 F.3d at 679). The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The ALJ's findings will be upheld "if supported by inferences reasonably drawn from the record . . . ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Burch*, 400 F.3d at 679; *Batson*, 359 F.3d at 1193. Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that

"the ALJ's error was 'inconsequential to the ultimate nondisability determination.' " *Robbins*, 466 F.3d at 885 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

## III. Discussion

The ALJ used the required five-step sequential framework to determine whether Tommasetti was disabled. *See* 20 C.F.R. § 404.1520; *see also Burch*, 400 F.3d at 679. At step one, the ALJ found that Tommasetti had not engaged in substantial gainful activity during the relevant period. At step two, the ALJ concluded that Tommasetti "satisfied the threshold or de minimus step of having a severe impairment" by reason of his lumbosacral condition and diabetes mellitus. At step three, the ALJ found that Tommasetti's back condition and diabetes did not meet or equal one of the listed impairments in the regulations. At step four, based on the residual functional capacity determination and the VE's testimony, the ALJ concluded that Tommasetti was able to perform past relevant work as an electronics assembler. However, acknowledging "confusion in the analysis of past relevant work" and her hesitation "to play expert," the ALJ made an alternative step five finding that, assuming Tommasetti could not perform past work, he could still perform other work in the national or local economy as a semiconductor assembler.

## A. Adverse Credibility Determination

Tommasetti argues that the ALJ's adverse credibility finding is not supported by the record. In order to find Tommasetti's testimony regarding the severity of his pain and impairments unreliable, the ALJ was required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ conducts a two-step analysis to assess subjective testimony where, under step one,

the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82. If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281, 1283-84. The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284; *see Orn*, 495 F.3d at 637-39. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

**[1]** Here, the ALJ gave Tommasetti "the benefit of the doubt" that he had a verifiable impairment and, therefore, the ALJ was required to provide clear and convincing reasons in support of her adverse credibility finding. The ALJ provided several permissible reasons. First, she inferred that Tommasetti's pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects. This is a permissible inference. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conser-

vative treatment' that she received").[2] The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.

[2] Second, the ALJ cited that Tommasetti was a "vague witness" with respect to the alleged period of disability and pain symptoms. The ALJ may rely on ordinary techniques of credibility evaluation. *Smolen*, 80 F.3d at 1284. The record supports the ALJ's determinations that on questioning Tommasetti "was not clear or certain insofar as his self-assessed work capabilities," and that he was not "a precise judge of his own capacities." She further commented that Tommasetti had made no attempts to perform sedentary work and had provided only a vague explanation as to why: "Because I cooked. I would feel good." The ALJ also noted that Tommasetti could not recall whether the cane he occasionally used was prescribed by a doctor.

[3] Third, the ALJ pointed to Tommasetti's testimony that his severe diabetes was not a "disabling problem," was controlled by medication, and was not the reason he stopped working. This testimony undermines Tommasetti's prior claims that his diabetes was among his disabling conditions. *See Smolen*, 80 F.3d at 1284.

---

[2]Tommasetti testified that his doctors suggested back surgery, but that he did not want to risk the procedure. Although not expressly relied on by the ALJ, the district court contrasted Tommasetti's reluctance to undergo back surgery to possibly end his debilitating pain with his willingness to risk an invasive elective surgery that would correct a largely cosmetic urological condition. Because the ALJ did not rely on this reason in support of her credibility determination, we may not rely upon it here. *See Connett*, 340 F.3d at 874 ("We are constrained to review the reasons the ALJ asserts.").

**[4]** Fourth, the ALJ stated that regarding the period in question Tommasetti "may not have been motivated to work due to his then large financial reserve." Although some might not consider $97,000 to be a large financial reserve, we cannot say that the ALJ's inference regarding Tommasetti's motivation to work based on this savings was unreasonable. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that in reaching findings the ALJ "is entitled to draw inferences logically flowing from the evidence").

**[5]** Finally, the ALJ doubted Tommasetti's testimony about the extent of his pain and limitations based on his ability to travel to Venezuela for an extended time to care for an ailing sister. The ALJ could properly infer from this fact that Tommasetti was not as physically limited as he purported to be. *Id.*[3]

**[6]** The ALJ's reasons for discounting Tommasetti's testimony are supported by substantial evidence in the record. Accordingly, we will not disturb the ALJ's adverse credibility finding.

## B.    Rejection of Dr. Nachenberg's Opinion

**[7]** Tommasetti next argues that the ALJ improperly discounted the opinion of his treating physician, Dr. Andrea Nachenberg, regarding Tommasetti's physical limitations. Dr. Nachenberg completed the Questionnaire, in which she opined that Tommasetti could sit continuously for ten minutes, sit for four hours in an eight-hour workday, stand continuously for thirty minutes, stand/walk for two hours in an eight-hour workday, required an ability to sit and stand at will, needed unscheduled breaks, and could at most occasionally lift ten pounds. The ALJ rejected Dr. Nachenberg's opinion only to the limited extent that it ruled out Tommasetti's "capacity for sedentary work" during the period in question.

---

[3]Although Tommasetti raises the fact that he had to see a physician for exacerbation of his back pain while in Venezuela, the physician only considered Tommasetti "unable to do strong physical work."

The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). Although the ALJ is not bound by an expert medical opinion on the ultimate question of disability, she must provide "specific and legitimate" reasons for rejecting the opinion of a treating physician. *Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

**[8]** The ALJ complied with *Magallanes* and provided specific and legitimate reasons for rejecting Dr. Nachenberg's opinion that are supported by the entire record. The ALJ stated that Dr. Nachenberg's assessment was essentially a "rehashing of claimant's own statements," and was therefore undermined by the ALJ's finding that Tommasetti was not credible. An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). A review of Dr. Nachenberg's records reveals that they largely reflect Tommasetti's reports of pain, with little independent analysis or diagnosis. Additionally, Dr. Wiseman, the consulting medical expert, testified that Dr. Nachenberg's Questionnaire primarily reflected Tommasetti's self-assessment and subjective willingness to work. Thus, the ALJ's adverse credibility determination supports the limited rejection of Dr. Nachenberg's opinion because it was primarily based on Tommasetti's subjective comments concerning his condition.

**[9]** Further, after discussing Tommasetti's medical history and treatments in detail, the ALJ found that Dr. Nachenberg's Questionnaire responses were inconsistent with the medical records. For example, the ALJ stated that the ultimate conclusions from Dr. Nachenberg's Questionnaire regarding the extent of Tommasetti's ability to stand and sit and his need

for breaks "did not mesh with her objective data or history." Indeed, Dr. Nachenberg's medical records do not provide support for the limitations set out in the Questionnaire. The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations.

[10] Tommasetti contends that Dr. Wiseman's "deferral" to Dr. Nachenberg's assessment weighs against the ALJ's rejection of Dr. Nachenberg's opinion. Although Dr. Wiseman "accepted" Dr. Nachenberg's opinion, Dr. Wiseman simultaneously concluded that Dr. Nachenberg's opinion was based on Tommasetti's self-reporting and expressed doubts as to Tommasetti's limitations. He also refused to provide a definite opinion of Tommasetti's condition or limitations. Dr. Wiseman's testimony, although equivocal, did not amount to a concurrence in Dr. Nachenberg's opinion but only indicated that he accepted her opinion because she was a qualified physician. In any event, the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citing *Magallanes*, 881 F.2d at 750). On this record, the ALJ reasonably rejected Dr. Nachenberg's opinion to the extent that it precluded Tommasetti from performing sedentary work.

## C. Tommasetti's Ability to Perform Past Work and Other Work

[11] Tommasetti further argues that the ALJ committed error at step four by finding that he could have returned to past work as an electronics assembler. The ALJ determined that Tommasetti's physical impairment limited him to "sedentary work," with a maximum lifting capacity of ten pounds. At step four, the ALJ and VE agreed that, based on the elec-

tronics assembler job classification in the *Dictionary of Occupational Titles* ("DOT"), Tommasetti could not perform electronics assembly work as he actually performed it because it would require him to lift more than ten pounds. However, the VE testified that electronics assembly work is performed in a variety of ways in the national economy. The ALJ deferred to the VE's assessment, stating that "regardless of the differences in demands in the position as performed in the national economy, it would not ordinarily require that the individual perform activities requiring a greater residual functional capacity" than that of Tommasetti.

[12] This assessment is contrary to the ALJ's determination that Tommasetti could only perform "sedentary" work because the DOT lists the "electronics assembler" position as requiring "light" exertion. *Dictionary of Occupational Titles* § 726.684-018 (4th ed. 1991); *see* 20 C.F.R. § 404.1567(a), (b). The DOT creates a rebuttable presumption as to the job classification. *Johnson*, 60 F.3d at 1435. To deviate from the DOT classification, an ALJ "may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Here, the ALJ offered her own speculative explanation to rebut the DOT's presumptive exertion requirement, commenting that the reason for the light exertion label is that the position "may require some pushing or pulling of arm controls." She concluded that this requirement should not elevate the job classification from sedentary to light. The ALJ also deferred to the VE's personal knowledge and experience as superseding the DOT to the extent that the light exertion label was related to any standing/walking requirements.

[13] The ALJ's determination that Tommasetti could return to his work as an electronics assembler is not supported by the record. Instead of persuasive evidence in the record, the ALJ relied on her own speculation and the VE's brief and indefinite testimony. *Id.*; Soc. Sec. Ruling 00-4p (Dec. 4, 2000) (stating that "[t]he adjudicator must resolve the conflict by

determining if the explanation given by the VE or [vocational specialist] is reasonable and provides a basis for relying on the VE or [vocational specialist] testimony rather than on the DOT information"). The ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT, and did not point to any evidence in the record other than the VE's sparse testimony for the deviation. Therefore, the ALJ's step four finding was erroneous.

[14] Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five. At step five, the ALJ concluded that, assuming Tommasetti could not perform past work, he could still perform other work in the national and local economies that existed in significant numbers. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c); *Robbins*, 466 F.3d at 885 (holding that error that is inconsequential to the ultimate nondisability determination is harmless error). The ALJ, relying on the VE's testimony, found that Tommasetti could work as a semiconductor assembler, which is a sedentary, semi-skilled position offering 100,000 positions nationally and 9,000 regionally. *See Dictionary of Occupational Titles* § 726.684-034. The VE testified that Tommasetti's prior skills as an electronics assembler transferred to the "very closely related" semiconductor assembler job because both positions involve similar assembler tools, assembler products, and sub-assembly components, and the semiconductor assembler position simply involves smaller items.

[15] The ALJ also found that the VE's testimony augmented Rule 201.07 of the Medical Vocational Guidelines (the "grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2,[4]

---

[4]We summarized the role of the grids, in the evaluation of a disability claim in *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006):

    The grids are applied at the fifth step of the analysis under 20 C.F.R. § 404.1520, and present, in table form, a short-hand

which provides an alternate basis for finding that Tommasetti was not disabled. Pursuant to Rule 201.07, a claimant of advanced age who is limited to sedentary work, has a high school degree, can perform skilled or semi-skilled work, and has transferrable skills is "not disabled." Rule 201.07 is augmented by Rule 201.00(f), which states that "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age . . . , there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Tommasetti meets these criteria.

Tommasetti argues that the ALJ's step five determination is undermined by this court's decision in *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006), which was filed after the district court's decision in this case. In *Lounsburry*, the claimant was restricted to performing light work and had transferrable skills. *Id.* at 1116. The court found that Rule 202.07, from the grid table governing light exertion, applied and that Footnote 2 to Rule 202.07 expressly incorporated language from Rule 202.00(c). *Id.* The result of this incorporation was that a person of advanced age with a high school degree who could do light work could only be found "not disabled" if her skills were readily transferable to a "significant range" of

---

method for determining the availability and numbers of suitable jobs for a claimant. [*Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).] The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress—a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *Id.* If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled. *Heckler v. Campbell*, 461 U.S. 458, 461 . . . (1983).

semi-skilled or skilled work. *Id.* at 1116-17. The court held that one "occupation" did not constitute a "significant range" and, because the ALJ had only identified one occupation, Lounsburry was "disabled." *Id.* at 1117.

[16] Tommasetti asks the court to extend *Lounsburry's* definition of "significant range," which pertains to a *light* work analysis under Rule 202.00(c), to his case, which involves a *sedentary* work analysis under Rule 201.07. He asserts that applying *Lounsburry*, the ALJ erred at step five by identifying only one occupation to which Tommasetti could adjust, *i.e.*, semiconductor assembler. We do not agree. *Lounsburry* is distinguishable because it involved a different grid rule that was based on light exertion (Rule 202.07), whereas this case involves a grid rule based on sedentary exertion (Rule 201.07). A plain reading of Rule 201.07 makes clear that it is not augmented by Rule 202.00(c), the specific text which was the driving consideration in *Lounsburry*. 468 F.3d at 1116-17. Moreover, the grid rules related to sedentary exertion do not contain the language of Rule 202.00(c).[5] The Social Security Administration has promulgated rules that treat jobs requiring light exertion and sedentary exertion differently under the grids. Tommasetti has not convinced us that we should do otherwise. Accordingly, we reject Tommasetti's attempt to graft rules applicable to the light exertion grid onto the sedentary exertion grid. A contrary result would lead to the confused and arbitrary application of grid rules from one exertional category to other exertional categories and might well, in effect, defeat the goal of consistency and uniformity in decision-making that the particularized grids serve. *See* Soc. Sec. Ruling 83-10 (1983) (stating that the regulations were expanded to include Appendix 2 and the grids to "increase consistency and promote the uniformity with which disability determinations are made" at step five).

---

[5]Tommasetti's argument that Rule 201.00(e) is the "same provision" as Rule 202.00(c) is not persuasive based on the text of the rules.

## IV.   Conclusion

We affirm the district court's conclusion that substantial evidence supports the ALJ's decision that Tommasetti was not disabled and thus not entitled to disability benefits. The ALJ provided clear and convincing reasons for rejecting Tommasetti's testimony as not credible, and she provided specific and legitimate reasons for discounting Dr. Nachenberg's opinions regarding Tommasetti's physical limitations and ability to perform sedentary work. Finally, although the ALJ erred at step four in finding that Tommasetti could perform his past work, this error was harmless because the ALJ properly concluded as an alternative at step five that he could perform work in the national and regional economies as a semiconductor assembler.

**AFFIRMED**.