Judge REINHARDT,
dissenting:
The Social Security Disability Act provides a safety net for those in our society unfortunate enough to be afflicted by disabilities, whether mental, physical or both, that prevent them from working. See 42 U.S.C. § 423(d)(1)(a). Because the ALJ’s reasons for denying disability benefits to De Herrera were not supported by the evidence before him, I dissent.
Dr. Bencomo’s uncontroverted testimony was that De Herrera has a fair to poor ability to deal with work stress. A vocational expert testified that there are no jobs available for a person with such a condition. Accordingly, had the ALJ credited Dr. Bencomo’s testimony, he would have been compelled to find De Herrera disabled within the meaning of the statute. The ALJ’s entire reasoning for disregarding Dr. Bencomo’s testimony as to this condition was that Dr. Bencomo relied on De Herrera’s subjective complaints of pain, which the ALJ viewed as not credible. Because De Herrera provided objective evidence of an underlying impairment, and there was no affirmative evidence of malingering, the ALJ was required to provide “specific, clear, and convincing reasons” for discrediting her testimony about the severity of her pain. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.2008).
The reasons offered by the ALJ and embraced by the majority were far from clear and convincing. Perhaps the worst of them is the assertion that information provided by De Herrara’s husband about her daily life undercut her claims of pain and disability. The ALJ based his conclusions as to her lack of disability and concomitant lack of credibility “in significant part” on the report provided by her husband. Yet there is nothing in the husband’s report to contradict her claim that she is too disabled to work, and much to support it. I simply cannot see how the fact that every third day she is able to muster herself to put a frozen meal in the microwave would indicate that she is able to work a regular job. Nor do I see how it is contrary to her testimony: she told the ALJ she could stand for half an hour at a time, which is perhaps twenty-five minutes *775 more than would be necessary to prepare the meals that her husband describes. I also cannot fathom how the fact that people visit De Herrera in her home, including one friend who comes over to do some of the housework that De Herrera is unable to do, demonstrates that she is able to function at a higher level or that she has less pain than she claimed. Social isolation is not a requirement for a disability finding.
Similarly, her claims of disability are hardly undercut by her husband’s reports that once or twice a week she is able to take herself around a grocery store in a motorized chair, that she drives short distances no more than a couple times a week, or that once every two weeks she goes to church. Particularly bizarre are the ALJ’s assertions that her sewing or watching movies “every now and then” demonstrated a lack of disability. Is it necessary to begin warning Social Security claimants that use of a DVD player or a needle and thread, even while supine, may disqualify them for benefits? As for the claim that she continued to get her daughter ready for school, her husband did not report that she was ever able to accomplish all the tasks necessary to send their daughter to school, but only that she tried, and that such effort might be all she was able to accomplish in a day: “She does very little chores around the house, mostly try to get things done for our girl to go to school. Rest of the day she sits or lies down because of the pain.”
Neither the ALJ nor the majority takes stock of other important information in the husband’s report, which corroborate her claims of disability: because of her pain, de Herrera is often unable to get out of bed before 11 a.m.; she spends most of the day sitting or lying down; she cannot put on pants, shave her legs or tie her shoes; and she can walk no more than 5 to 10 minutes before needing a rest of 10 to 20 minutes. Moreover, she is “in a constant state of depression because she cannot be as she used to be, she cannot be the mother or wife she was before.” In short, her husband’s report describes De Herrera as afflicted by physical pain and psychological difficulties arising out of that pain. There is nothing in it to suggest that she is in less pain or retains more functionality than she claimed, or that she would be able to work anything close to regular hours in a regular job.
The rest of the ALFs reasons are no more convincing. The first, that the objective medical evidence, while sufficient to establish some level of pain, did not support her reports as to the severity of her pain, “is exactly the type [of justification of an adverse credibility finding that] we have previously recognized the regulations prohibit.” Robbins v. Social Sec. Admin., 466 F.3d 880, 884 (9th Cir.2006); see also SSR 96-7p, 1996 WL 374186, at *1. The second, that she previously reported to a doctor that she could stand for four hours, drew on a statement that she made three years prior to the hearing. During the three years between that statement and her hearing testimony, De Herrera did not work, rarely left the house, and spent most of her days sitting and lying down. It is not a surprise — much less an inconsistency to support a finding that De Herrera was not credible — that after three years of near inactivity, her physical abilities had diminished. See SSR 96-7p, 1996 WL 374186, at *5 (“[T]he lack of consistency between an individual’s statements and other statements that he or she has made at other times does not necessarily mean that the individual’s statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, *776 persistence, or functional effects of his or her symptoms.”)
Finally, the majority and the ALJ assert that De Herrera’s condition improved with treatment, and that a favorable response to treatment can undermine a claimant’s complaints of debilitating pain. As a preliminary matter, De Herrera made no statement that suggests that the treatment improved her condition to the point that she could work: she stated only that epidurals she received three years before the hearing “improved” her sciatica and that Vicodin “helps” her back pain. Moreover, pain can be “improved” and “helped” without bringing an applicant anywhere close to being able to function. Further, there is no rule that favorable response to any treatment undermines a claim of debilitating pain. The case law discusses only, favorable responses to conservative, noninvasive treatments that themselves do not preclude work, such as use of a back corset, physical therapy and electromagnetic stimulation. See Tommasetti, 533 F.3d at 1040. The rule clearly has no application to powerful narcotics like Vicodin, which De Herrera described, quite plausibly, as making her “dumb” and interfering with her ability to make it to doctor’s appointments. [ER 232] A treatment that incapacitates as it eases pain cannot be considered evidence that the underlying pain is not debilitating.
Refusing disability benefits to qualified persons for reasons that are not clear and convincing, let alone without any merit, defeats the will of Congress and damages those individuals least able to absorb the occasional errors made by our systems of adjudication. The majority opinion affirms an administrative decision that appears to do exactly that. Accordingly, I dissent.