BYBEE, Circuit Judge,
dissenting:
Cotton’s allegations of disabling physical and mental pain were supported by the uncontradicted opinions of four treating doctors. The ALJ rejected Cotton’s allegations based on a finding that she lacked credibility, and rejected the opinions of all four of her treating doctors largely based on the idea that their diagnoses were based on Cotton’s own (incredible) self-reporting. The majority holds that both the ALJ’s adverse credibility determination and her evaluation of the medical opinion evidence were supported by “clear and convincing” reasons. I respectfully disagree, and would hold that the ALJ erred in both of these determinations.
I
Because Cotton “produce[d] objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom,” and because “there is no affirmative evidence of malingering, the ALJ [could] reject [Cotton’s] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.” Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.2008) (quota *773 tion marks omitted). The ALJ did not meet this burden.
First, the ALJ’s selective reliance on Cotton’s histrionic personality disorder to find that Cotton “dramatizes and exaggerates her symptoms” is not convincing. None of Cotton’s treating doctors found that Cotton had exaggerated her symptoms, and the only doctor to diagnose Cotton with histrionic personality disorder, Dr. Lechnyr, also diagnosed Cotton with fibromyalgia and at least three mental disorders — borderline personality disorder, dysthymic disorder, and pain disorder— not necessarily involving any tendency to exaggerate one’s symptoms. The ALJ’s cherry-picking of Cotton’s histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding.
Moreover, the fact that Cotton was able to perform some routine activities, such as walking and using a computer, shows only that she could at times briefly perform certain light activities. It does not contradict her testimony that her impairments prevented her from performing a full-day’s work on a daily basis. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.2001) (“This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to overall disability. One does not need to be utterly incapacitated to be disabled.” (quotation marks omitted)).
Finally, the ALJ’s statement that Cotton’s testimony was not supported by objective evidence in the record is simply inaccurate. Multiple doctors found her to be disabled based on her fibromyalgia and various mental disorders, and these doctors supported their conclusions with specific medical evidence, such as Dr. Morris’s finding that Cotton had fourteen out of eighteen positive tender points and negative control points. Because “the doctors’ reports and test results usually corresponded with the afflictions [Cotton] perceived, particularly [her fibromyalgia],” the ALJ erred in rejecting Cotton’s testimony. Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir.2005).
II
Even if the ALJ had correctly determined that Cotton lacked credibility, the ALJ committed reversible error in her evaluation of the medical opinion evidence, both in (1) rejecting the opinions of Drs. Maier and Morris regarding their diagnoses of fibromyalgia and their assessment of Cotton’s resulting limitations; and (2) rejecting the opinions of Drs. Telew and Lechnyr regarding Cotton’s mental limitations.
Where a treating doctor’s opinion or ultimate conclusion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). In rejecting the opinions of Drs. Maier and Morris, the ALJ reasoned that these physicians did not provide “objective findings” in support of their diagnoses but rather based these diagnoses on Cotton’s own self-reporting, which the ALJ found lacked credibility.
Fibromyalgia “is diagnosed entirely on the basis of patients’ reports of pain and other symptoms.” Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir.2004). Thus, we have stated explicitly that an ALJ is not permitted to reject a treating physician’s opinion regarding fibromyalgia because of a lack of supporting “objective” evidence. See id. at 594 (“The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.” (alteration and quotation marks omitted)). Even putting aside this principle from Be-necke, Drs. Morris and Maier did in fact support their diagnoses with objective *774 findings, including Dr. Maier’s finding that Cotton had “widespread triggering” and chronic back pain, and Dr. Morris’s finding of fourteen out of eighteen positive tender points and negative control points.
Moreover, I find unconvincing the ALJ’s reasoning that the doctors’ opinions should be rejected because they were based on Cotton’s self-reporting. The majority relies on the proposition ini Tommasetti that “[a]n ALJ may reject a treating physician’s opinion if it is based to a large extent on a claimant’s self-reports that have been properly discounted as incredible.” 533 F.3d at 1041 (quotation marks omitted). However, Tommasetti did not hold that such reasoning could constitute “clear and convincing reasons” for rejecting a doctor’s uncontradicted testimony but rather “specific and legitimate reasons,” id.r which is a lower standard of review used when the ALJ is evaluating a contradicted medical opinion, see Lester, 81 F.3d at 830. I do not believe that the mere lack of credibility of the claimant can constitute “clear and convincing reasons” for rejecting the uncontradicted opinions of two treating physicians. The circularity of that logic is starkly evident in this case: essentially, the ALJ found that Cotton lacked credibility because her allegations were unsupported by objective medical evidence, and then rejected the opinions of her treating doctors (the objective medical evidence she provided) because they were based on Cotton’s testimony. Under this reasoning, it is hard to imagine how Cotton could have possibly demonstrated that she had fibromyalgia.
The ALJ erred in rejecting the opinions of Drs. Telew and Lechnyr for similar reasons. A psychologist’s opinion is almost always based to a large degree on the patient’s “self-reporting,” so an over-reliance on this fact would make it extremely difficult for a claimant to establish disability based on mental impairments. Furthermore, contrary to the ALJ’s assertions, both Drs. Telew and Lechnyr provided a variety of objective findings in support of their conclusions, including findings that Cotton suffered from impaired concentration, persistence, and pace, and that she exhibited symptoms of borderline personality disorder, dysthymic disorder, pain disorder, and polysubstance abuse in remission.
The ALJ’s determination is especially unconvincing with respect to Dr. Lechnyr, who found that Cotton was disabled based on a combination of testing and clinical interviews despite being the only doctor to diagnose her with histrionic personality disorder, the basis of the ALJ’s claim that Cotton was prone to exaggeration. The ALJ apparently rejected all of Dr. Lech-nyr’s conclusions except for his diagnosis of histrionic personality disorder, a line of reasoning I consider quite dubious.
Finally, the ALJ erred in placing more weight on the opinion of Dr. Davis — a non-examining physician — than on the opinions of Cotton’s treating doctors, see Lester, 81 F.3d at 831 (opinion of nonexamining doctor cannot by itself constitute substantial evidence that justifies rejection of treating physician), particularly in the context of fibromyalgia, see Benecke, 379 F.3d at 594 n. 4 (noting that the opinions of rheumatol-ogists — specialists in fibromyalgia — are given particular weight with respect to fibromyalgia because this disease “is poorly understood within much of the medical community”). The majority reasons that since “some doctors ... indicated that at most [Cotton] had moderate limitations and could sustain employment^] ... the Commissioner’s decision must be upheld because the evidence would support either outcome.” Mem. Dispo. at 4-5. This reasoning conflicts with our requirement that an ALJ give more weight to the opinions of treating doctors than to doctors that do *775 not treat the claimant. See Lester, 81 F.3d at 830.
In sum, four treating doctors opined that Cotton could not work due to her physical and mental impairments and provided extensive evidence for their conclusions that is not contradicted by any treating or examining physician. Because the ALJ failed to provide “clear and convincing reasons” for rejecting these uncontra-dicted opinions, I respectfully dissent.