FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 06 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| MONIQUE M. WILLIAMS, | No. 09-17627 |
| Plaintiff - Appellant, | D.C. No. 2:08-cv-01297-FJM |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted August 8, 2012
San Francisco, California

Before:    CALLAHAN and WATFORD, Circuit Judges, and SINGLETON,
Senior District Judge.[**]

Monique M. Williams ("Williams") appeals the district court's order and

judgment affirming the Commissioner of the Social Security Administration's

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable James K. Singleton, Senior United States District Judge for the District of Alaska, sitting by designation.

("Commissioner's") decision denying Williams' application for Supplemental Security Income and Disability Insurance Benefits (benefits) under Titles II and XVI of the Social Security Act.[1] We review de novo a district court's order affirming the Commissioner's denial of disability benefits to ensure that the Commissioner's decision (1) correctly applied the law and (2) is supported by substantial evidence. *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009). We affirm.[2]

1.      Williams claims that the Administrative Law Judge ("ALJ") erred in evaluating Dr. Johnson's statements from a letter he wrote for Williams in 2005. The ALJ stated that Dr. Johnson's letter was (1) inconsistent, since it stated Williams was disabled but also that her tests were in the normal range, (2) unclear, and (3) unsupported by "objective data." These are specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Johnson's brief, conclusory, and inconsistent statements in his letter from 2005. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief,

[1]      The parties are familiar with the facts, and we repeat them here only as necessary to explain our decision.

[2]      We do not address the various arguments that Williams failed to raise before the district court because they have been waived. *See Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam).

conclusory, and inadequately supported by clinical findings."). Accordingly, the ALJ did not err in evaluating Dr. Johnson's 2005 letter.

2.    Williams argues that the ALJ erred in evaluating Dr. Bryant's medical opinion. The ALJ noted that "there were no real issues" with Dr. Bryant's report, and Williams' Residual Functional Capacity (RFC) is consistent with Dr. Bryant's ultimate medical conclusions concerning Williams' ability to work.[3] While the ALJ might have been clearer, it appears the he adopted most of Dr. Bryant's medical conclusions. The ALJ did specifically disagree with two of Dr. Bryant's conclusions, however, including (1) that Williams had dementia, and (2) that Williams' test scores were below average because Dr. Bryant failed to discuss the standard deviation in Williams' test results.

In rejecting the dementia diagnosis, the ALJ relied on Dr. Clayton's opinion that Williams did not have dementia, as well as Dr. Bryant's report which stated that Williams' cognitive tests showed improvement from 1997 to 2004. The ALJ also relied on Dr. Bryant's statements that Williams had "normal intelligence" with only moderately impaired IQ scores. Moreover, Williams admitted that she

---

[3]    At the administrative hearing on August 30, 2007, the ALJ stated that Dr. Bryant "does apparently a very thorough job it would seem . . . [s]o I am going to give deference to her and her work," further suggesting that the ALJ agreed with Dr. Bryant's medical opinion.

3

thought Dr. Bryant's diagnosis of dementia was wrong, and nothing in the record suggests Williams has dementia. Thus, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Bryant's conclusion that Williams has dementia.

In rejecting Dr. Bryant's conclusion that Williams scored "below average" on several specific cognitive tests, the ALJ relied on only the medical opinion of Dr. Clayton, a nonexamining physician. Under *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." We are not certain that rule applies when the nonexamining physician identifies an apparent mistake on a technical matter for which an in-person examination would not provide any comparative advantage. But even assuming the ALJ did err, we would find that because he incorporated Dr. Bryant's ultimate conclusions about Williams' limitations and ability to work into Williams' RFC, any error did not affect the ALJ's decision and was therefore harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that an ALJ's error is harmless where it does not alter the "outcome of the case").

3.     Williams contends that the ALJ erred in silently disregarding Dr. Johnson's reports from 1994 and 1998 and Dr. Wicher's report from 2000. All three of these reports predate the date of Williams' alleged onset of disability in 2001. We have stated that "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). However, it is clear from our precedent and the Social Security Regulations that "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (ALJ errs completely ignoring medical evidence); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Thus, the ALJ erred in failing to consider Dr. Johnson's reports from 1994 and 1998 and Dr. Wicher's report from 2000.

We "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. In *Molina*, we stated that "[a]lthough we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that

an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* at 1115 (internal quotation marks omitted).

Here, the ALJ based his disability determination on the medical opinions of Dr. Bryant, Dr. Patrick, and Dr. Clayton. Moreover, Williams' RFC is consistent with these opinions and other substantial evidence in the record. Accordingly, the ALJ's failure to comment on Dr. Johnson's reports from 1994 and 1998 and Dr. Wicher's report from 2000 was harmless.

4. Williams contends that the ALJ erred in discrediting the lay-witness evidence given by her father, David Williams, and her friend, Jon Tomasi. The ALJ rejected their lay opinions (1) because neither was medically or vocationally qualified, and (2) because their statements were unreliable since they generally repeated Williams' allegations. The ALJ also rejected some of David Williams' written statements because they were unsupported by the medical evidence in the record.

In *Bruce*, we held that an ALJ may not discredit lay witness testimony "as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Additionally, in *Bruce* we found the ALJ's reasons for rejecting the claimant's wife's lay testimony inadequate where the ALJ discredited her testimony because she was "not knowledgeable in the medical and/or

6

vocational fields . . . ." *See id.* at 1116 & n.1 ("A lay person, Bruce's wife, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities."). Thus, the ALJ erred in discrediting the lay opinions of David Williams and Jon Tomasi for not having a medical or vocational background and also erred by rejecting some of David Williams' written statements as not supported by medical evidence in the record.

These errors were harmless in light of our decision in *Valentine*, where we held that when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives "germane reasons for rejecting" the lay testimony. 574 F.3d at 694. The ALJ here gave clear and convincing reasons supported by substantial evidence in the record in finding Williams not entirely credible. In addition, the record shows that David Williams' and Jon Tomasi's lay opinions generally repeated Williams' allegations. Since the ALJ rejected their opinions specifically because they generally repeated Williams' allegations, under *Valentine* the ALJ properly discredited their testimony and the other improper reasons cited by the ALJ for discrediting their lay opinions were harmless. *Id.* (noting that the ALJ's rejection of the claimant's

spouse's lay testimony because she was an interested party who never saw the claimant at work was harmless since the lay testimony repeated the claimant's allegations, and the ALJ found that the claimant's allegations were not credible).

**AFFIRMED.**