**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 16 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT LEROY DATTILO, | No.   18-15297 |
| Plaintiff-Appellant, | D.C. No. 5:16-cv-05552-HRL |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Howard R. Lloyd, Magistrate Judge, Presiding

Submitted May 14, 2019**
San Francisco, California

Before:  WALLACE and IKUTA, Circuit Judges, and MOLLOY,*** District
Judge.

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

***        The Honorable Donald W. Molloy, United States District Judge for
the District of Montana, sitting by designation.

Scott Dattilo appeals from the district court's decision affirming the administrative law judge's (ALJ) denial of his application for disability insurance and supplemental security income benefits. We review the denial de novo and reverse only if the denial "contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). We will not reverse if the ALJ's error was "inconsequential to the ultimate nondisability determination." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. Dattilo challenges the ALJ's conclusion that his anxiety and depression are nonsevere. For an impairment to be "severe," it must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 416.922(b) (defining basic work activities as the abilities and aptitudes necessary to do most jobs). Substantial evidence—including medical records submitted by examining and non-examining physicians—supports the ALJ's conclusion. In particular, Dr. Maria Acenas, the psychiatric consultative examiner, indicated that Dattilo's mental status examination was normal with the exception of a depressed mood that could benefit from some psychotherapy. From her examination, she concluded that Dattilo "will be able to perform work on a consistent basis, maintain a regular attendance and finish normal workweek" and

2

"will likewise also be able to deal with the usual stress encountered in a competitive workplace." Further, even if the ALJ erred in concluding that Dattilo's mental limitations were nonsevere, any error is harmless because the ALJ considered Dattilo's mental limitations when assessing his residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

2. Dattilo argues that the ALJ failed to consider the combined impact of his physical and mental impairments. The ALJ is required to consider "all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529; *see Beecher v. Heckler*, 756 F.2d 693, 694 (9th Cir. 1985) ("A claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects"). As the district court correctly described, the ALJ "thoroughly considered and accurately summarized the evidence, including Dattilo's medical history, all medical evidence as to both plaintiff's physical impairments and mental status, and statements about how plaintiff's symptoms affect him."

3. Dattilo argues that the ALJ failed to follow the "special technique" under 20 C.F.R. § 404.1520a(a), applicable when evaluating severity of mental impairments. The "special technique" requires the ALJ to determine whether the claimant has "a medically determinable mental impairment[]," 20 C.F.R. §

404.1520a(b)(1), and if so, to "rate the degree of functional limitation resulting from the impairment[]" in four specific functional areas—activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, *id.* § 404.1520a(b)(2), (c). The ALJ's decision "must include a specific finding as to the degree of limitation in each of the [four] functional areas." *Id.* § 404.1520a(e)(4). Here, the ALJ provided a detailed description explaining the determinations of "no" or "mild" degrees of functional limitations in the four areas and properly applied the special technique in assessing Dattilo's mental impairments.

4. Dattilo challenges the ALJ's finding that the record did not support his testimony regarding the severity of his symptoms and limitations. "An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen*, 80 F.3d at 1281).

4

The ALJ properly discredited Dattilo's testimony, explaining that although his impairments could reasonably be expected to cause the alleged symptoms, testimony on the severity of his symptoms were exaggerated in light of the evidence. In so concluding, the ALJ highlighted the discrepancy between subjective testimony and objective medical evidence. For example, the diagnostic imaging showed only mild impairment; Dattilo's chiropractor indicated overall improvement; Dr. Mirza's examination indicated no acute distress, no evidence of radiating pain, intact sensation in upper extremities, normal motor strength, normal gait, and no acute distress; and an emergency room visit indicated similar results. Additionally, the ALJ relied on Dattilo's history of conservative treatment, which "is sufficient to discount a claimant's testimony regarding severity of an impairment."" *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

5. Dattilo argues that the ALJ violated his due process rights by misapplying the Medical Vocational Guidelines (commonly referred to as "the grids") at step five. He identifies three errors: using the wrong age category in considering the grids, finding that he could perform light work, and considering whether he had transferable work skills.

First, "[f]or purposes of applying the grids, there are three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older)." *Lockwood v. Comm'r Social*

*Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citing 20 C.F.R. § 404.1563(c)–(e)). If a claimant is "within a few days to a few months of reaching an older age category," an ALJ may consider using the older age category in certain cases, 20 C.F.R. § 404.1563(b), but the ALJ is not required to do so and need not explain why an older age category was not used. *Lockwood*, 616 F.3d at 1069–71. The ALJ is "required by regulation only to *consider* whether to use the older age category." *Id.* at 1069 (emphasis added). Here, the ALJ erred because it considered age at the time of alleged disability onset (51 years old), not age at the time of final decision (54 years old) as required. *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988). However, the error was harmless because Dattilo still fell into the "approaching advanced age" category regardless of the age used, and the ALJ considered using—but chose not to use—the older, "advanced age" category. *See Lockwood*, 616 F.3d at 1069–71.

Second, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The ALJ properly considered the medical evidence to support that Dattilo could perform a reduced range of light work.

Third, the ALJ found that Dattilo possessed the transferrable skills of "knowledge of building processes, materials and tools for construction," and that he could make a successful adjustment to other work as a general hardware

6

salesperson.  Again, the ALJ's reasoning was free of legal error and sufficiently supported by the vocational expert's testimony.

**AFFIRMED.**