NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 10 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LISA KAYE PATTERSON,

Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant-Appellee.

No.  18-35537

D.C. No. 3:17-cv-05581-RSL

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Submitted July 7, 2020[**]
Seattle, Washington

Before:  HAWKINS, D.M. FISHER,[***] and M. SMITH, Circuit Judges.

Lisa Patterson seeks disability insurance benefits under Title II of the Social

Security Act. She claims that multiple physical impairments resulted in the loss of

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

her job in 2002 and have since prevented her from maintaining gainful employment. An Administrative Law Judge (ALJ) found that Patterson was not disabled, and the district court upheld the ALJ's decision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

1. Even if it was not forfeited, Patterson's argument that the ALJ considered neither the evidence of her chronic pain nor the functional limitations that the pain caused fails on the merits. The ALJ properly followed the directive of 42 U.S.C. § 423(d)(2)(B). He did not consider Patterson's two severe impairments in isolation from her other claimed impairments and symptoms, and he specifically stated that her "pain complaints are considered throughout this decision."

2. Patterson's argument that the ALJ failed to consider the impact of her fibromyalgia at step three is also without merit. The ALJ noted the relevance of Social Security Ruling (SSR) 12-2p, 2012 WL 3104869 (July 25, 2012), and then observed that Patterson's fibromyalgia did not "meet or equal" similar listings. It was Patterson's burden to "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Her failure to do so precludes reversal. *See Burch v. Barnhart*,

---

[1] "We review the district court's order affirming the ALJ's denial of social security benefits de novo, and will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

400 F.3d 676, 683 (9th Cir. 2005).

3.      In formulating Patterson's residual functional capacity (RFC), the ALJ adduced "specific, clear and convincing reasons," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted), to discount Patterson's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms." Even in the light of SSR 12-2p, the ALJ indicated sufficient evidence in the medical records to demonstrate that over no twelve-month period from June 2002 to March 2009 did Patterson's claimed physical limitations exceed the severity ultimately accounted for in the RFC assessment.[2] Specifically, the records from 2002 to 2004 support the ALJ's observation that Patterson "could still perform light work." They also support the ALJ's observation that the effects of an October 2005 car accident subsided over the following year. Finally, most of the records from the insured period's last years are from 2007, and the ALJ noted that despite a herniated disc, by the summer Patterson was apparently functional enough to walk normally and take two trips. At the very least, this evidence indicates a sustained level of physical functioning inconsistent with Patterson's claims of incapacitation. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012).[3]

_____

[2] Patterson's contention that the ALJ was "playing doctor" ignores that consideration of medical records is part and parcel of what an ALJ is supposed to do. *See, e.g.*, 20 C.F.R. § 404.1545(a)(3).

[3] The ALJ also considered Patterson's medical records from before and after the relevant time period. Here too we are satisfied that the ALJ indicated clinical

3

The ALJ also offered "germane" reasons to discount the statements of Patterson's family members: they were inconsistent with the medical records. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Insofar as the statements' general descriptions suggest that Patterson's symptoms ever, for a continuous twelve-month period, reached a level of severity greater than that contemplated by the RFC assessment, they differ little from Patterson's testimony. As a result, just as the ALJ provided clear and convincing reasons to doubt that testimony, he also offered germane reasons to discount the lay testimony. *See Molina*, 674 F.3d at 1114.

4.      Finally, substantial evidence supports the ALJ's finding that Patterson's RFC renders her capable of performing her prior relevant work as she actually performed it.[4] Patterson argues that her absenteeism during her last years of employment demonstrates her inability to perform that work.[5] Yet while the

---

observations and reports that convincingly call into question Patterson's testimony insofar as it claimed, for any continuous twelve-month period, incapacitation in excess of the RFC assessment's ultimate findings.

[4] The Dictionary of Occupational Titles labels this position as No. 249.367-074 Teacher Aide II. We agree with the district court that the ALJ's misidentification of Patterson's position as No. 249.367-034 was a harmless "scrivener's error."

[5] Patterson offers no response to the Commissioner of Social Security's observation that she did not raise before the district court her argument that her job, as she described it at the hearing, does not fall within the scope of her RFC. Thus, the argument is forfeited. And, in any event, Patterson's testimony clearly suggests that her employer allowed, but did not require, her to sit on the floor.

medical reports indicate chronic lower back pain, they also suggest the influence of other factors: a negative reaction to Duragesic patches, the effects of the flu, and stress following her mother's death. A reasonable mind could accept this evidence as supporting the ALJ's step-four finding, which was based not only on this but also on the full record.[6]

**AFFIRMED.**

---

[6] Because we reach this conclusion, we need not address the ALJ's findings at step five.