**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TINA MARIE POPA,<br>    *Plaintiff-Appellant*,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner Social Security,<br>    *Defendant-Appellee.* | No. 15-16848<br><br>D.C. No.<br>2:14-cv-02681-<br>DKD<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
David K. Duncan, Magistrate Judge, Presiding

Argued and Submitted May 16, 2017
San Francisco, California

Filed August 18, 2017

Before: Sidney R. Thomas, Chief Judge, Kim McLane
Wardlaw, Circuit Judge, and Brian M. Morris,* District
Judge.

Opinion by Judge Morris

---

*The Honorable Brian M. Morris, United States District Judge for the
District of Montana, sitting by designation.

## SUMMARY[**]

### Social Security Benefits

The panel reversed the district court's decision affirming the Commissioner of Social Security's denial of an application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, and remanded for an award of benefits.

The panel held that the administrative law judge committed legal error when she failed to provide legally sufficient reasons to discount the opinion of examining psychologist Dr. Hart, who opined that claimant likely would not maintain regular attendance at work. The panel noted that the ALJ provided no explanation as to why claimant's ability to attend church weekly in the past, shop for groceries, and watch television, established that she possessed the ability to maintain regular attendance at work.

The panel also held that the ALJ failed to provide germane reasons to discount the opinion of nurse practitioner Dr. Sorrell, who possessed a Ph.D. in nursing and treated petitioner for more than two years. The panel held that the fact Dr. Sorrell, an "other source," provided information in a Commissioner-supplied check-box form was not a sufficient reason to reject her opinions, much less a germane reason. The panel further held that the ALJ erred when she discounted claimant's own testimony based on what the ALJ deemed to be inconsistent statements. The panel held that in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

this case, a single discrepancy failed to justify the wholesale dismissal of claimant's testimony.

The panel held that the ALJ's error in discounting the opinions of Dr. Hart and Dr. Sorrell permeated her hypothetical to the vocational expert regarding the availability of a significant number of jobs in the national economy that claimant could perform. The panel found that an award of benefits was warranted because in response to counsel's questions, the vocational expert stated that a person with the moderate limitations noted by Dr. Sorrell could not perform work that exists in significant numbers in the national economy.

## COUNSEL

Mark Caldwell (argued), Phoenix, Arizona, for Plaintiff-Appellant.

Michael R. Tunick (argued), Assistant Regional Counsel; David Morado, Regional Chief Counsel, Seattle Region X; John S. Leonardo, United States Attorney; Office of the General Counsel, Social Security Administration, Seattle, Washington, for Defendant-Appellee.

**OPINION**

MORRIS, District Judge:

Tina Marie Popa appeals the district court's decision affirming the Commissioner of Social Security's denial of her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. We possess jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for an award of benefits.

I

Tina Marie Popa applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*., on May 9, 2011. Popa alleges disability due to mood disorder, bipolar disorder, anxiety, depression, and chronic total-body pain. Popa alleges a disability onset date of December 21, 2010. The Commissioner of Social Security ("Commissioner") denied Popa's application initially and on reconsideration.

Popa requested a hearing before an administrative law judge ("ALJ"). *Id*. The ALJ conducted a video hearing on April 18, 2013. Popa was represented by counsel. The ALJ reviewed the relevant medical evidence. The ALJ received testimony from Popa and an impartial vocational expert. The ALJ denied Popa's application based on her determination that Popa could perform jobs that exist in significant numbers in the national economy.

Popa requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Popa's request for a review of the ALJ's decision on October 3, 2014. The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied review. 42 U.S.C. § 405(h); 20 C.F.R. § 416.1481.

Popa filed a complaint seeking judicial review of the Commissioner's final decision on December 11, 2014. The District Court concluded that the ALJ had committed no legal error and that substantial evidence supported the the ALJ's decision. The District Court affirmed the ALJ's decision and entered judgment in the Commissioner's favor on July 21, 2015. Popa filed this timely appeal on September 15, 2015.

II

Popa's appeal focuses on her mental impairments that include bipolar disorder, depression, and anxiety that she claims inhibit her ability to work. The ALJ reviewed several medical evaluations of Popa. State agency psychologist Ashley B. Hart, Ph.D., conducted a psychological consultative examination of Popa on September 8, 2011. Dr. Hart diagnosed Popa with chronic mood disorder.  Dr. Hart offered a number of opinions regarding Popa's functional capacity that suggested that Popa could perform basic tasks, understand instructions, respond appropriately to coworkers and supervisors, maintain socially appropriate behavior, be aware of normal hazards in the work place, and respond appropriately to changes in the work place setting. Dr. Hart opined, however, that Popa was "not likely to maintain regular attendance" [at work] due to [her] mental health."

The ALJ assigned "substantial weight" to Dr. Hart's assessment, except for Dr. Hart's finding that Popa likely would not maintain regular attendance at work.  The ALJ determined that this finding by Dr. Hart conflicted with

Popa's "considerable activities of daily living." The ALJ cited three examples: (1) Popa's ability "to attend church every week," (2) Popa's ability to "watch[] television," and (3) Popa's ability to "shop[] for groceries."

Certified Nurse Practitioner Dr. Tanya Sorrell, Ph.D., treated Popa for depression and mood swings at the Arizona Counseling and Treatment Service beginning in May 2011. The record failed to establish Dr. Sorrell's professional qualifications. Popa informed the Court that Dr. Sorrell obtained a doctorate degree in nursing from the University of Arizona. The Commissioner never challenged this assertion.

Popa lived in a women's shelter at the time that Dr. Sorrell treated her. Popa reported a history of methamphetamines abuse, but she had stopped using methamphetamine in December 2010. Dr. Sorrell diagnosed Popa with mood disorder. Dr. Sorrell prescribed psychiatric medication for Bipolar II Disorder on May 19, 2011. Dr. Sorrell continued to treat Popa for Bipolar II Disorder through 2012.

Dr. Sorrell assessed Popa's residual functional capacity on October 11, 2012. Dr. Sorrell completed a check-box form provided by the Commissioner entitled "Supplemental Questionnaire as to Residual Functional Capacity." Dr. Sorrell checked boxes indicating: (1) that Popa had no limitations in her ability to understand and remember short, simple instructions; (2) that Popa had slight limitations in her ability to carry out short, simple instructions, and in her ability to interact appropriately with the public; and (3) that Popa had moderate limitations in her ability to understand and remember detailed instructions, make judgments on simple work-related decisions, interact appropriately with

supervisors and co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. The Supplemental Questionnaire defined a "moderate" limitation as a limitation that "would reduce [the claimant's] ability to function (10% of task)."

The ALJ assigned Dr. Sorrell's opinion "reduced weight." The ALJ failed to include the moderate limitations described by Dr. Sorrell in the hypothetical that she presented to the vocational expert. State agency medical consultant Dr. Hubert R. Estes, M.D., reviewed Popa's medical records on February 6, 2012. Dr. Estes concluded that Popa suffered no severe mental impairments. The ALJ assigned "significant" weight to Dr. Estes's opinion.

Popa testified at a hearing before the ALJ about her daily activities. Popa testified that she lives with her mother. Popa testified that she sometimes cooks, cleans, does dishes, and shops for groceries. Popa testified that she watches television with her mother about two hours per day. Popa testified that she does not drive because her driver's license was suspended in 2003. Popa testified that she used to attend church, but stopped in 2012.

Popa reported that she takes psychiatric medications prescribed by Dr. Sorrell. Popa testified that the medications make her sleep a lot and that once or twice a week she will "sleep right through . . . to the next day." Popa testified that her memory was poor, and that she has a hard time focusing on tasks.

Popa testified about her struggles with depression. Popa testified that she "suffer[s] real bad with depression." Popa

testified that she is not suicidal, but she doesn't "care to be alive." Popa testified that she does not like being around other people.

Popa testified about her complaints of constant full-body pain. Popa testified that on a scale of one to ten, her average pain level is an eight or nine with medication. Popa testified that she can walk for about five minutes, sit for "maybe" one hour, and lift maybe 20 to 30 pounds. The ALJ presented a hypothetical question to a vocational expert. The ALJ asked the vocational expert to consider a 49-year-old person with a bachelor of arts degree; previous work experience that was skilled and sedentary; the ability to sit for up six hours, stand for up to six hours in an eight hour day, and to walk for up to six hours in an eight hour day; the ability occasionally to stoop; the ability occasionally to lift and to carry 20 pounds; the ability frequently to lift and carry 10 pounds; climb stairs, the ability to climb stairs, but not ladders; and not the ability to kneel, crouch, and crawl. The ALJ also asked the vocational expert to assume that the person could not perform a job that requires good visualization in very dim lighting, and the person must avoid concentrated exposure to humidity, heights, and moving machinery. With respect to mental limitations, the ALJ asked the vocational expert to assume the person could only "understand, remember, and carry out simple job instructions." The vocational expert responded that such a hypothetical person would be able to perform light, unskilled work that exists in significant numbers in the national economy, such as a janitor/cleaner, a fast food worker, and a cashier.

Popa's counsel also presented a hypothetical question to the vocational expert. Popa's counsel asked the vocational expert whether the person described by the ALJ could

perform work that existed in significant numbers in the national economy, if that person also possessed the "moderate limitations" noted by Dr. Sorrell, and those moderate limitations would cause the person to be "off task 10 percent" of the time. The vocational expert responded that "if the person is off task six minutes out of every hour," she could not perform work that exists in significant numbers in the national economy because the person "would not be competitively employable."

The ALJ issued a written decision denying Popa's disability benefits. The ALJ determined that Popa suffered from the following severe impairments: vision impairment, peripheral neuropathy, obesity, bipolar disorder, depression, and anxiety. The ALJ concluded, however, that Popa's impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Popa possessed the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), subject to the mental limitation that Popa could only "understand, remember and carry out simple job instructions." The ALJ acknowledged that Popa could not perform any of her prior work. The ALJ determined, however, that Popa could work as a janitor/cleaner, fast food worker, and cashier, or perform other jobs that existed in significant numbers in the national economy, based on a hypothetical that the ALJ posed to the vocational expert.

The Appeals Council declined to review the ALJ's disability determination. Popa appealed to the United States District Court for the District of Arizona, which affirmed the ALJ's denial of disability. Popa now appeals.

## III

The Social Security Administration has established a five-step sequential process to determine whether an applicant qualifies as disabled within the meaning of the Social Security Act. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004); 20 C.F.R. § 416.920. The five steps address the following issues: (1) whether the claimant presently works in substantial gainful activity; (2) whether the claimant's impairment, or a combination of impairments, qualifies as severe; (3) whether the impairment, or combination of impairments, equals an impairment listed in the regulations; (4) whether the claimant's residual functional capacity allows her to perform her past relevant work; and (5) whether significant numbers of jobs exist in the national economy that the claimant can perform. *See Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724–25 (9th Cir. 2011).

In considering whether an applicant qualifies as disabled, an ALJ may reject the uncontradicted medical opinion of an examining psychologist only if the ALJ provides "clear and convincing" reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). An ALJ may discount the opinion of an "other source," such as a nurse practitioner, if she provides "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ committed legal error when she failed to provide legally sufficient reasons to discount the opinions of examining psychologist Dr. Hart, and when she failed to provide germane reasons to discount the opinions of treating nurse practitioner Dr. Sorrell. The ALJ rejected Dr. Hart's opinion that Popa was "not likely to maintain regular attendance [at work] due to [her] mental health." The ALJ

stated that Dr. Hart's opinion lacked "substantial weight," and, as a result, declined to include the limitation described by Dr. Hart in the hypothetical that she presented to the vocational expert.

The ALJ determined that Dr. Hart's opinion conflicted with Popa's "considerable activities of daily living." Specifically, the ALJ cited as conflicts Popa's ability to "attend church every week," Popa's ability to "watch[] television," and Popa's ability to "shop[] for groceries." No medical evidence in the record contradicts Dr. Hart's opinion. Dr. Estes simply opined that Popa suffered no severe impairments. Dr. Estes's opinion of no severe impairments does not necessarily conflict with Dr. Hart's opinion regarding Popa's minimal limitations that would affect Popa's ability to maintain regular attendance at work.

The ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Dr. Hart's opinion that Popa likely would not maintain regular attendance at work. *Lester*, 81 F.3d at 830. The ALJ simply stated conclusions that do not constitute the type of substantial evidence necessary to overcome Dr. Hart's opinion. The ALJ stated that Dr. Hart's opinion conflicted with Popa's "considerable activities of daily living." The activities cited by the ALJ were not inconsistent with regularly attending a full-time job. Furthermore, the ALJ provided no explanation as to why Popa's ability to attend church weekly in the past, shop for groceries, and watch television, establish that Popa possesses the ability to maintain regular attendance at work. Finally, the ALJ ignored entirely Popa's uncontradicted testimony that she had stopped attending church in 2012.

In this regard, the ALJ also discounted Popa's own testimony based on what the ALJ deemed to be inconsistent statements. Popa testified that she does not drive because her driver's license had been suspended in 2003. Popa told Dr. Hart that "[s]he does drive." The ALJ cites to no other alleged inconsistencies in Popa's testimony. An ALJ may consider inconsistent statements by a claimant in assessing her credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883–84 (9th Cir. 2006). The ALJ similarly failed to explain her decision to assign "reduced weight" to Dr. Sorrell's opinions regarding Popa's moderate limitations in five functional areas. Dr. Sorrell opined that Popa suffered moderate limitations, defined as off task 10 percent of the time. The ALJ failed to include the moderate limitations described by Dr. Sorrell in the hypothetical that she presented to the vocational expert.

The ALJ afforded "reduced weight" to Dr. Sorrell's opinions for the following reasons: (1) Dr. Sorrell produced her opinion regarding Popa's moderate limitations in a form "consisting largely of checked boxes without further explanation;" (2) the "severity" of the limitations conflicted with other medical evidence in the record; (3) Dr. Sorrell's opinions conflicted with Popa's daily activities; and (4) Dr. Sorrell's findings possibly resulted from sympathy.

We pause to note that Dr. Sorrell possesses a Ph.D in nursing. The Social Security regulations provide an out-dated view that consider a nurse practitioner as an "other source." *Molina*, 674 F.3d at 1111. The record indicates that Dr. Sorrell served as Popa's primary care medical provider on a regular basis for more than two years. Dr. Sorrell started

seeing Popa in May of 2010 and continued these examinations through the administrative hearing. No other medical professional actually treated Popa. Dr. Hart conducted a single examination and Dr. Estes simply reviewed Popa's medical records. The ALJ's decision to disregard Dr. Sorrell's testimony makes little sense in light of the prominent role that Dr. Sorrell played in Popa's medical treatment. The Social Security regulations require that the ALJ provide "germane reasons" to reject Dr. Sorrell's opinions. The ALJ failed to provide "germane reasons."

The ALJ instead justified her decision to discount Dr. Sorrell's opinions due to the fact that Dr. Sorrell listed her opinions on a check-box form provided by the Commissioner as part of Dr. Sorrell's assessment of Popa's residual capacity. The Commissioner, however, provided the check-box form. More importantly, Dr. Sorrell had treated Popa as her primary care medical provider for nearly 18 months by the date of the residual capacity assessment. Notwithstanding the ALJ's access to Popa's treatment records, the ALJ failed to provide germane reasons to discount Dr. Sorrell's opinions due to her use of a check-box form provided by the Commissioner under these circumstances. *See Molina*, 674 F.3d at 1111. Simply put, the fact Dr. Sorrell, an "other source," provided information in a Commissioner-supplied check-box form provides no reason to reject her opinions, much less a germane reason.

The ALJ next discounted Dr. Sorrell's opinions because they conflicted with other medical evidence in the record. In particular, the ALJ compared Dr. Sorrell's finding of moderate limitations with Dr. Hart's finding of minimal limitations. The ALJ provided little illumination of this alleged contrast other than repeating that Popa's daily

activities included "attend[ing] church every week" and
"shop[ping] for groceries." The ALJ fails to explain,
however, why moderate limitations would prevent Popa from
attending church and shopping for groceries. The ALJ
ignored Popa's testimony that she had stopped attending
church in 2012. Lastly, the ALJ noted her suspicion that Dr.
Sorrell's opinions may have derived from "sympathy" for
Popa. The ALJ offered no facts to support her suspicion. An
ALJ "may not assume that doctors routinely lie in order to
help their patients collect disability benefits." *Lester*, 81 F.3d
at 832.

IV

The ALJ improperly discounted the opinions of Dr. Hart
and Dr. Sorrell. The ALJ's error in discounting these opinions
permeated her hypothetical to the vocational expert regarding
the availability of a significant number of jobs in the national
economy that Popa could perform. Popa's counsel asked the
vocational expert whether the hypothetical person described
by the ALJ could perform work that existed in significant
numbers in the national economy, if that person also had the
"moderate limitations" noted by Dr. Sorrell. Popa's counsel
explained that those moderate limitations would cause the
person to be "off task 10 percent" of the time. The vocational
expert responded that "if the person is off task six minutes out
of every hour," she could not perform work that exists in
significant numbers in the national economy because the
person "would not be competitively employable." Thus, there
is no need for further proceedings. We reverse and remand
for an award of benefits.

   **REVERSED; REMANDED** for an award of benefits.