**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KIMBERLY MARY PICKETT, | No. 23-16192 |
| Plaintiff-Appellant, | D.C. No. 2:22-cv-01461-MTL |
| v. | |
| MICHELLE KING, Acting Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Submitted September 11, 2024[**]
Phoenix, Arizona

Before: RAWLINSON and COLLINS, Circuit Judges, and FITZWATER,[***] District Judge.
Dissent by Judge COLLINS.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

Plaintiff-Appellant Kimberly Mary Pickett ("Pickett") appeals the district court's judgment affirming the Commissioner of Social Security's denial of her 2014 and 2019 applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Pickett contends that the Administrative Law Judge ("ALJ") erred by rejecting her testimony about the severity of her symptoms and by rejecting the opinion of her treating physician, Dr. Khalsa. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. We review de novo the district court's judgment upholding the denial of benefits, and we will not overturn the Commissioner's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is only a "modest burden," *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021), and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

2. The ALJ did not err by rejecting Pickett's testimony regarding her symptoms. When a claimant presents objective medical evidence of an impairment, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Lambert v.*

*Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted). Here, the ALJ provided four specific reasons: Pickett's testimony was inconsistent with (1) her medical records, (2) her improvement with treatment, and (3) her daily activities, and (4) her private insurance benefits may have disincentivized her to work.

First, the ALJ cited specific evidence showing that Pickett's symptom testimony was contradicted by medical evidence in the record, and this conclusion is supported by substantial evidence in the record as a whole.

Next, the ALJ cited specific evidence that Pickett's symptom testimony was inconsistent with her activities. Pickett testified that she could only sit for "15 minutes, out of 30." However, she "was able to sit through nearly six hours of examination with a break for lunch." In addition, she traveled frequently from Arizona to California and to New York, which would involve extended sitting. This conclusion is also supported by substantial evidence in the record as a whole.

An adverse credibility finding may be supported by an inference regarding a claimant's motivation to work, considering her other financial means. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Thus the ALJ did not err in reasoning that Pickett's monthly private insurance benefits of $12,000.00 may have created a disincentive for her to work.

Because the evidence shows that Pickett's improvement with treatment was only mild and temporary, this basis for rejecting Pickett's symptom testimony was not supported by specific, clear and convincing reasons in the record as a whole. *See, e.g.*, *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024). Even so, this insufficient basis does not warrant reversal because the ALJ's other reasons and ultimate credibility determination are still supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

3. The ALJ did not err by rejecting Dr. Khalsa's medical opinion concerning Pickett's condition. For claims filed before March 27, 2017, an ALJ may reject a treating physician's opinion that is inconsistent with other medical opinions "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ rejected Dr. Khalsa's opinions on the grounds that they were (1) inconsistent with the physician's own treatment notes; (2) "vague and imprecise" and on a check-box form containing "minimal information"; and (3) appeared to be based on Pickett's subjective complaints. An ALJ may reject an opinion that is incongruous with that physician's own treatment record or notes. *See Tommasetti,* 533 F.3d at

1041. The ALJ cited specific incongruities among Dr. Khalsa's treatment notes, and this conclusion is supported by substantial evidence.

An ALJ may also reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings," *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), provided on a check-box form "with little to no explanation," *Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023), or that lacks support in the record as a whole, *see Batson*, 359 F.3d at 1195. The ALJ specifically identified which opinion was "vague and imprecise" and how the opinions on the check-box form lacked explanation and were unsupported by the record as whole. This rationale from the ALJ constitutes an additional specific, legitimate reason for rejecting Dr. Khalsa's opinion.

Finally, "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal quotation marks and citation omitted). Because Dr. Khalsa's opinion appeared to be based on Pickett's self-reports and the ALJ made an adverse credibility finding supported by substantial evidence, this, too, is a specific and legitimate reason to reject Dr. Khalsa's opinion.

**AFFIRMED**.

*Pickett v. King*, No. 23-16192

COLLINS, Circuit Judge, dissenting:

In my view, substantial evidence does not support the Administrative Law Judge's ("ALJ") rejection of (1) Plaintiff-Appellant Kimberly Mary Pickett's testimony about the intensity, persistence, and limiting effects of her symptoms and (2) the opinions of her treating physician, Dr. Khalsa. I respectfully dissent.

1. "[W]here, as here, the ALJ 'determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted). If the ALJ erroneously "provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record," then the ALJ's "error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted).

I agree with the majority that the ALJ erred in rejecting Pickett's symptom testimony on that ground that she had experienced improvement with treatment.

*See* Memo Dispo. at 4.  As the majority notes, the record shows that any such improvement was "only mild and temporary," and this ground therefore is not sufficient under our caselaw.  *Id*.  But, in my view, this error was not harmless. Two of the additional three grounds provided by the ALJ are also inadequate, and I do not think that the remaining fourth ground is sufficient, standing alone, to establish harmless error.

Substantial evidence does not support the ALJ's conclusion that Pickett's daily activities were inconsistent with her symptom testimony.  Only two of the items of evidence cited by the ALJ even arguably bear on Pickett's claim that pain limited her ability to sit for extended periods of time—namely, Dr. Gross's observation that Pickett was "able to sit through nearly 6 hours of examination with a break for lunch," and Pickett's air travel from Arizona to New York and California for treatment.[1]  But these were discrete undertakings in pursuit of medical treatment for her condition, not daily activities.  And the evidence shows that Pickett endured them with pain: Dr. Gross observed that she rubbed her left shoulder and repeatedly leaned to her left during her examination, and Pickett

---

[1] The ALJ also pointed to Pickett's ability to walk and drive short distances and her ability to care for her infant "with some help from her family," but there is no basis for concluding that these discrete, limited activities are inconsistent with Pickett's testimony about her inability to sit for extended periods of time.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

stated that she needed to wear ice packs and pace the aisles when traveling by plane. These instances therefore do not provide clear and convincing reason to discredit Pickett's symptom testimony. *See Howard v. Heckler*, 782 F.2d 1484, 1485, 1488 (9th Cir. 1986) (holding that the claimant's "capacity to engage in periodic restricted travel" was not an adequate basis to discredit his testimony that he suffered from "a constant burning sensation" in his feet "as well as incapacitating headaches, arthritis of the back, and bursitis of both shoulders" that required him to lie down and elevate his feet for 20 minutes three to four times per day).

Nor does substantial evidence support the ALJ's conclusion that Pickett's medical records were inconsistent with her symptom testimony. Both asserted inconsistencies identified by the ALJ were significantly overstated. First, the ALJ reasoned that Pickett's testimony that her left hand was "useless" was contradicted by Dr. Cunningham's observation of "variability with grip and finger movement." But Pickett had testified specifically that the *particular fingers* innervated by her ulnar nerve were "useless" because the ulnar nerve had been crushed. Dr. Cunningham's observation that Pickett's wrists and fingers were normal *except for variability* in her left hand's grip and finger movements is more corroborative than contradictory of that testimony. And Pickett's broader testimony about her left hand's functional limitations is likewise consistent with Dr. Cunningham's

3

observations that Pickett's left upper extremity demonstrated less-than-normal strength, that her left hypothenar region showed mild atrophy, that she reported numbness in her left hand and forearm, and that gripping with her left hand induced pain. None of these observations by Dr. Cunningham provide clear and convincing reason to discredit Pickett's testimony on this score.

The ALJ also reasoned that Pickett's December 2021 testimony that she suffered headaches three to four times per week was inconsistent with a questionnaire she completed in September 2019 in which she indicated headaches almost daily. But the ALJ ignored the fact that these were clearly estimates of *contemporaneous* frequency, which could—and, the evidence shows, did— fluctuate over time. The mere fact that Pickett reported slightly different rolling-average frequencies of headaches at two points in time two years apart is not a clear and convincing reason to discredit her testimony.

At most, substantial evidence supports only the last of the ALJ's reasons for rejecting Pickett's symptom testimony—namely, that Pickett had private insurance benefits that, the ALJ reasoned, were "a potential disincentive to return to work." But without any specific evidence of actual inconsistencies in Pickett's testimony, this generalized reason, standing alone, is too thin a reed to support the ALJ's ultimate adverse credibility determination. Viewing the ALJ's reasoning as a whole and in light of the errors discussed above, I cannot conclude that there

4

"remains substantial evidence supporting the ALJ's decision." *Molina*, 674 F.3d at 1115. Accordingly, I would hold that the ALJ's errors in rejecting Pickett's symptom testimony were not harmless.

2. In my view, the ALJ also erred in giving no weight to Dr. Khalsa's opinion. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also* 20 C.F.R. § 404.1527(c)(2). The ALJ gave three reasons for rejecting Dr. Khalsa's opinion: it (1) "appear[s] to be based on [Pickett's] subjective complaints," (2) is "inconsistent with the record," and (3) is "vague and imprecise" and delivered in a check-box form with "minimal explanation." But none of these are "specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

"An ALJ may reject a treating physician's opinion if it is based '*to a large extent*' on a claimant's self-reports *that have been properly discounted as incredible*." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (emphasis added) (citation omitted). For the reasons stated above, in my view Pickett's self-reports were not properly discounted as incredible, and therefore the ALJ erred in rejecting Dr. Khalsa's opinion on this basis. Even if Pickett's self-reports were properly discounted as incredible, substantial evidence does not support the

conclusion that Dr. Khalsa relied on them "to a large extent." *Id*. (citation omitted). On the contrary, Dr. Khalsa's notes indicated that he performed physical examinations, ordered and analyzed imaging, and reviewed Pickett's medical records before rendering his opinion.

"[I]ncongruity between [a treating physician's] Questionnaire responses and her medical records provides a[] . . . specific and legitimate reason for rejecting [the physician's] opinion." *Tommasetti*, 533 F.3d at 1041. Here, however, the limited incongruity asserted by the ALJ—namely, Dr. Khalsa's conclusions about limitations in Pickett's *right* hand—does not adequately support the wholesale rejection of his opinion. The ALJ observed that Dr. Khalsa's treatment notes from January 2019 and January 2020 do not mention right-hand limitations, but that overlooks the fact that Dr. Khalsa's subsequent treatment notes from April 21, 2020 report "*new onset* right arm pain" (emphasis added). Dr. Khalsa's assertion, in his April 21, 2020 and November 17, 2021 assessments, that Pickett has right-hand limitations is therefore not inconsistent with his omission of right-side limitations in his pre-April 21, 2020 notes. Although Dr. Khalsa did not specifically note this nuance concerning the later onset of right-side limitations when he answered generalized yes-or-no questions about how long Pickett had experienced her limitations, that is a very thin basis on which to predicate a wholesale rejection of his opinions. That is especially true given that any such

6

narrow incongruity as to the time at which Pickett began to experience adverse symptoms in her right hand has no bearing on Dr. Khalsa's opinions about the impairments to Pickett's *left* hand and neck, which form the basis of Pickett's disability application. Dr. Khalsa's opinions about those impairments were congruous with his medical records, and the ALJ erred in rejecting those opinions based on a contrived asserted incongruity concerning right-side limitations.

We have also held that "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). And "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citation omitted). But substantial evidence does not support the ALJ's rejection of Dr. Khalsa's opinion on this basis because Dr. Khalsa's opinion was adequately supported by clinical findings and adequately explained by his treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding that the ALJ improperly rejected a physician's check-box opinion that was adequately supported by the record, including by the physician's own treatment notes); *see also Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Dr. Khalsa identified Pickett's particular conditions with specific medical codes and explained that they stem

from ectopic bone formation and neurological deficits following the use of bone morphogenetic proteins in an anterior cervical discectomy and fusion operation. And Dr. Khalsa's opinion as to the extent of Pickett's limitations was based on his examination of the level of nerve damage; reviews of CT scans and MRIs, including ones he specifically ordered; and physical examinations he conducted and summarized in his notes. Dr. Khalsa's opinion was therefore adequately supported by clinical findings and adequately explained. The ALJ's decision to reject Dr. Khalsa's opinion on this basis—while simultaneously accepting without explanation Dr. Cunningham's opinion, which was also delivered in a check-box form—was erroneous.

\* \* \*

Because, in my view, the ALJ erroneously rejected Pickett's symptom testimony and Dr. Khalsa's opinion, I would remand this case to the district court with instructions to remand the matter to the agency for further proceedings. I respectfully dissent.

8